FILED

2024 Nov-05  PM 04:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | |
|---|---|
| **GREGORY HUDSON** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 3:23-cv-0920-LCB** |
| | ) |
| **KILOLO KIJIKAZI,** *Acting* | ) |
| *Commissioner, Social Security* | ) |
| *Administration*, | ) |
| | ) |
| **Defendant.** | |

### MEMORANDUM OPINION

On July 16, 2023, the Claimant, Gregory Hudson, filed a complaint seeking judicial review of an adverse decision of the Commissioner of the Social Security Administration ("the Commissioner") pursuant to 42 U.S.C. § 405(g).  (Doc. 1). The Commissioner filed an answer and a copy of the administrative record on September 15, 2023.  (Doc. 7).  Hudson filed a brief in support of his position on October 13, 2023, and the Commissioner filed a response on November 12, 2023.  (Docs. 9, 10). Hudson did not file a reply brief.  Accordingly, the issues are now fully briefed, and Hudson's case is ripe for review.  For the reasons below, the Commissioner's final decision is due to be affirmed.

1

## I.     BACKGROUND

On April 13, 2021, Hudson protectively filed a Title II application for a period of disability and disability insurance benefits.  Hudson also protectively filed a Title XVI application for supplemental security income on April 13, 2021. In both applications, Hudson alleged disability beginning December 31, 2019.  These claims were denied initially on November 19, 2021, and upon reconsideration on April 12, 2022.  Thereafter, Hudson then requested a hearing before an Administrative Law Judge ("the ALJ").  The ALJ held a telephone hearing on October 25, 2022.  Hudson testified at the hearing, as did an impartial vocational expert ("VE").   The ALJ subsequently issued an unfavorable decision.  Hudson requested review of the ALJ's decision by the Appeals Council, but that request was denied on May 19, 2023, and the ALJ's decision became the Commissioner's final decision.   This lawsuit followed.

## II.     THE ALJ'S DECISION

To determine whether a claimant is disabled, the ALJ follows a five-step evaluation process set forth by the Social Security Administration.  *See* 20 CFR 416.920(a).  The steps are followed in order and, if it is determined that the claimant is or is not disabled at a particular step of the evaluation process, the ALJ will not proceed to the next step.  After the October 25, 2022 hearing, the ALJ issued a written opinion explaining the decision.  (Tr. at 22–39).  In her decision, the ALJ

followed the five-step evaluation process set forth by the Social Security Administration.

The first step requires the ALJ to determine whether the claimant is engaging in substantial gainful activity, which is work involving significant physical or mental activities usually done for pay or profit. *See Green v. Comm'r, Social Sec. Admin.*, 555 Fed. App'x 906, 907–08 (11th Cir. 2014). If a claimant is engaged in substantial gainful activity, he is not disabled, and the inquiry stops. Otherwise, the ALJ will proceed to step two. In the present case, the ALJ found that Hudson was not engaged in substantial gainful activity during the relevant time period. (Tr. at 28). Accordingly, the ALJ moved on to the second step of the evaluation.

At step two, an ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 CFR 416.920(c). An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities…." *Id.* If a claimant does not have a severe impairment, he is not disabled, and the inquiry ends. If he does have a severe impairment, the ALJ will proceed to the third step. In the present case, the ALJ found that Hudson had the following severe impairments: degenerative disc disease of the cervical spine, chronic obstructive pulmonary

disease ("COPD"), and obesity.    (Tr. at 28) (citing 20 CFR 404.1520(c),

416.920(c)).[1]

At the third step, an ALJ determines whether the claimant's impairments or

combination thereof are of a severity to meet or medically equal the criteria of an

impairment listed in 20 CFR Part 404, Subpart P, Appendix I.  If the claimant's

impairment or impairments meet or equal a listed impairment, then the claimant is

disabled, and the evaluation ends.  Otherwise, the ALJ proceeds to the next step. In

this case, the ALJ found that Hudson's impairments did not meet or equal any of the

listed criteria and proceeded to step four.  (Tr. at 31) (citing 20 CFR 404.1520(d),

404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

Step four of the evaluation requires an ALJ to first determine the claimant's

residual functional capacity ("RFC").  20 CFR 416.920(f).  After that, the ALJ must

determine whether he has the RFC to perform the requirements of any past relevant

work. *Id.* The term "past relevant work" means work performed within the last 15

years prior to the alleged date of onset.  If a claimant has the RFC to perform past

relevant work, he is not disabled, and the evaluation stops.  Otherwise, the evaluation

---

[1] Medical evidence of record showed Hudson had malignant neoplasm of the testes, hypertension, hypertensive cardiac disease, obstructive sleep apnea, prostate hyperplasia, and anxiety. The ALJ found that these medically determinable impairments created no more than minimal work-related limitations and, therefore, were non-severe impairments. Hudson does not challenge this finding in his complaint or brief. Thus, the Court limits its discussion to only those impairments that Hudson challenges.

proceeds to the final step. In Hudson's case, the ALJ found that he had the following

RFC:

> The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can lift and carry 20 pounds occasionally and 10 pounds frequently. He can stand and/or walk with normal breaks for 6 hours in an 8-hour workday and sit with normal breaks for 6 hours in an 8-hour workday. He can frequently balance on uneven terrain. He can frequently stoop, kneel, crouch, and crawl. He cannot operate hazardous machinery or commercially drive. He cannot overhead reach with the bilateral upper extremities. He can tolerate occasional exposure to extreme cold and humidity. He cannot work around hazardous machinery and unprotected heights.

(Tr. at 32). Given this RFC, the ALJ concluded that Hudson was unable to perform

his past relevant work as a backhoe operator. (Tr. at 37–8). However, considering

his age, education, work experience, and residual functional capacity, the ALJ found

that there are jobs existing in significant numbers in the national economy that

Hudson can perform. (Tr. at 38). Specifically, the ALJ accepted the VE's testimony

that an individual with Hudson's RFC could perform light, unskilled jobs such as

that of a photocopy machine operator, a marking clerk, or a mailroom clerk. *Id.*

According to the VE, those jobs exist in sufficient number in the national economy.

*Id.* Based on the findings above, the ALJ determined that Hudson was not disabled

as defined by the Social Security Administration. (Tr. at 39).

### III.   STANDARD OF REVIEW

This Court must review the record and determine whether the Commissioner's

decision is supported by substantial evidence and whether the correct legal standards

were applied.  42 U.S.C.§ 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971);

*Winschel v. Comm'r of Social Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).  The

Court's role in review is limited so that the Court must not "decid[e] the facts anew,

mak[e] credibility determinations, or re-weigh[] the evidence."  *Moore v. Barnhart*,

405 F.3d 1208, 1211 (11th Cir. 2005).  Instead, the Court will scrutinize the record,

and affirm if the decision is supported by substantial evidence, even if the evidence

preponderates against the Commissioner's findings.  *Henry v. Comm'r of Soc. Sec.*,

802 F.3d 1264 (11th Cir. 2015); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th

Cir. 1983).  Substantial evidence is "more than a mere scintilla" but "less than a

preponderance" and is "such relevant evidence as a reasonable person would accept

as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consolidated

Edison v. NLRB*, 305 U.S. 197, 229 (1938)).

### IV.   HUDSON'S ARGUMENT

Hudson raises one argument in his brief. He argues that the ALJ failed to

properly evaluate his subjective complaints under the Eleventh Circuit's pain

standard so that her decision is not supported by substantial evidence.  (Doc. 9 at 5).

Specifically, Hudson argues that the ALJ "did not consider all the Plaintiff's medical

records when reaching her decision and [] minimized the evidence in the record that supports the Plaintiff's description of debilitating pain and shortness of breath." *Id.*

## V.     ANALYSIS

To determine whether a claimant is disabled as defined by the Social Security Administration, an ALJ evaluates all symptoms, including subjective complaints, such as pain and how the symptoms affect a claimant's daily life and ability to do work.  20 CFR § 404.1529(a).  But a claimant's subjective complaints alone are insufficient to establish a disability.  *Id.*  Rather the ALJ will apply a two-step analysis. *Id.* at § 404.1529(a)–(b).  First, the ALJ looks for either objective medical signs or laboratory findings that there is a medical impairment that could reasonably be expected to produce the symptoms alleged.  *Id.*  If this first step is satisfied, the ALJ evaluates the intensity and persistence of the symptoms to determine how the symptoms limit the claimant's capacity for work.  *Id.* at § 404.1529(c).  Specifically, the ALJ considers whether an individual's statements about the intensity, persistence, and limiting effects of his symptoms are consistent with the medical signs and laboratory findings in the record.  *Id.*; *see also* SSR 16-3p. If the two are inconsistent, the ALJ may properly determine that the individual's symptoms are less likely to reduce his capacity to perform work-related activities, so that he is not disabled as defined by the Social Security Administration.    SSR 16-3p. Additionally, an individual who fails to follow prescribed treatment that might

improve symptoms supports a finding that there are inconsistencies in the record. *Id.*

In the Eleventh Circuit, a claimant can establish a disability based on testimony of pain and other symptoms by satisfying two parts of a three-part test (the pain standard): (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain, or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. *Holt v. Sullivan*, 821 F.2d 1221, 1223 (11th Cir. 1991). If a claimant satisfies the three-part test, the ALJ still considers the intensity, persistence, and limiting effects of a claimant's pain or other symptoms. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995).

The Eleventh Circuit created the pain standard when it interpreted 20 CFR § 404.1529. *See Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002) (citing *Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1214–15 (11th Cir. 1991)). The pain standard and the Commissioner's regulations at 20 CFR § 404.1529 are consistent so that application of § 404.1529 is also application of the Eleventh Circuit pain standard. *Wilson*, 284 F.3d at 1226.

### A. The ALJ properly evaluated Hudson's subjective complaints with the objective medical evidence.

At the October 25, 2022, hearing, Hudson testified and listed his various subjective complaints regarding his pain and how it affects his daily living and

ability to work.  (Tr. at 32).  After this hearing, the ALJ issued her written opinion

finding that Hudson was not disabled.

The ALJ began her opinion using the two-step process created by the

Commissioner in 20 CFR § 404.1529.[2]  (Tr. at 32).  Based on the Hudson's testimony

and the objective medical evidence, the ALJ determined that Hudson had "medically

determinable impairments that could reasonably be expected to cause the alleged

symptoms," which satisfies the first part of the two-step process in analyzing

subjective complaints.  *Id.* at 33.  However, the ALJ found that Hudson's statements

"concerning the intensity, persistence, and limiting effects of [his] symptoms are not

entirely consistent with the medical evidence and other evidence the record."  *Id.*

Based on this finding, the ALJ concluded that "the record does not support a finding

that the claimant is disabled, and the claimant can perform work-related activities

within the confines of the [previously] described [RFC]."  *Id.*

1. <u>There is Substantial Evidence to Support the ALJ's Finding Regarding Hudson's Neck Pain.</u>

To support his complaint of disability due to debilitating neck pain, Hudson

presented evidence of two neck surgeries—a 2017 C6–C7 anterior cervical disc

fusion with allograft and plate for left C7 radiculopathy and a 2022 C7–T1 posterior

cervical foraminotomy and discectomy.  (Tr. at 33, 34). In October 2022, he testified

---

[2] Notably, the ALJ's application and discussion of the two-part test from 20 CFR § 404.1529 is also application of the Eleventh Circuit's pain standard.

that he was unable to turn his neck to the left and is unable to use and hold items in his left hand. (Tr. at 55).  He testified that he has pain and numbness down the left side of his body.  *Id.*  He testified that he is unable to grip anything with his left hand or raise it up past his chest.  *Id.* at 56.

However, the ALJ found that this testimony was inconsistent with objective medical findings. The ALJ noted that upon examination with Stacy Davis, FNP, in October 2021, Hudson had normal strength in his bilateral upper extremities, bilateral lower extremities, and bilateral grip.  *Id.* at 34.  He was able to pinch, grab, and manipulate objects.  *Id.*  He was able to screw the top on and off a water bottle, pump sanitizer out of a bottle, and rub sanitizer on his bilateral hands.  *Id.*  He had normal range of motion in the cervical spine with formal flexion, extension, lateral flexion, and rotation.  *Id.*  He had normal range of motion in the bilateral shoulders and in the hand joints.  *Id.*

The ALJ also considered medical records from April 2022, noting that before his second neck surgery, he scored a 5/5 on motor examination, except for a 4/5 for hand grip weakness on the left.  *Id.*  After the second neck surgery in June 2022, four months before his testimony, Hudson underwent a post-operative visit.  *Id.* Treatments records show he stated he was "doing well" and reported improvement in his radicular symptoms and that he was released back to full activity with no restrictions. *Id.*

Hudson argues that the ALJ did not consider that at the same June 2022 visit, Hudson said that he was still having some numbness and tingling on his left side. (Doc. 9 at 9). However, the ALJ references this statement in her report and found that there was no objective support for these complaints.  (Tr. at 34–35.)  The ALJ also noted that the treating physician prescribed some medication, Neurontin, for his symptoms on an as-needed basis.  *Id.* at 34.  Hudson mistakenly claims that "any relief was temporary as shown in the June 2022 treatment records where the Plaintiff was still endorsing a lot of numbness and ting[l]ing his hands as well as pain." (Doc. 9 at 9, citing to Tr. 695) (emphasis omitted). However, Dr. Aderholt proscribed the Neurontin in June 2022 *after* Hudson expressed continued numbness and tingling. (Tr. 695, reading "[Hudson is] is still having a lot of numbness and tingling in his hands and pain . . . he is now on some Gabapentin.")[3].

Hudson also argues that there is "not substantial evidence to support the ALJ's determination that the Plaintiff's neck pain improved to the point he would be able to sustain the physical demands of a range of light work."  (Doc. 9 at 9). However, Hudson himself testified "[s]ince the 2022 surgery on my neck, [the pain is] a lot better than what I did have before . . . like I said, most of the pain, [the 2022] surgery got rid of. . ."  (Tr. at 50). This testimony shows substantial evidence that Hudson's neck pain significantly improved after his 2022 surgery.

---

[3] Gabapentin is the generic name for Neurontin.

Based on the objective medical records and Hudson's own testimony regarding his pain, there is substantial evidence to affirm the ALJ's finding that Hudson's neck pain did not diminish his capacity to work beyond performing a limited light range of work.

2. There is Substantial Evidence to Support the ALJ's Finding Regarding Hudson's Chronic Obstructive Pulmonary Disease.

To support his claim of disability due to chronic obstructive pulmonary disease, Hudson testified he is not able to walk very far (not more than 100 yards) without needing to sit and rest.  (Tr. at 55).  He testified that sometimes he cannot complete a sentence without losing his breath.  *Id.* at 56.  He testified that he wakes up at night "gasping for breath" and that he feels like a "fish out of water" when he sleeps because "he just can't get his breath."  *Id.* at 60.

However, the ALJ found that this testimony was inconsistent with objective medical findings.  The ALJ noted that upon examination with Stacy Davis, FNP, in October 2021, Hudson was in no acute distress, both of his lungs were clear to auscultation, and he had no wheezes, rales, or rhonchi.  (Tr. at 34).  There was no indication that he had any shortness of breath during the consultation with Davis. *Id.*

Hudson argues that the ALJ did not properly consider or characterize all of the evidence.  (Doc. 9 at 9).  Hudson points out that he testified that he is "exhausted and has trouble breathing" and in 2021, reported he is "extremely tired and fatigued

12

when he wakes up." *Id.* However, Hudson has been directed to use a CPAP machine at night to help him breathe, but he testified that he does not use it at night. (Tr. at 61). Moreover, in her evaluation from October 2021, Stacy Davis, FNP, noted that Hudson still smokes. (Tr. at 614). Additionally, neurology records from June 2022 show that Hudson reported no insomnia, loud snores, excessive sleepiness, or sleep attacks. (Tr. at 29). Finally, in March 2022, Dr. Marlin Gill performed a PFT on Hudson, which showed that his FVC and FEV1 were "mildly diminished." Id. at 34. After a bronchodilator treatment using albuterol with nebulizer, another PFT was performed, wherein Hudson's lung volumes remained only slightly low with no significant improvements. Id. Because of this, the overall interpretation was that Hudson's COPD presented only a "mild restriction." *Id.*

Hudson contends that "[w]hen [he] underwent a consultative evaluation by Dr. Stacy Davis on October 16, 2021 she noted [that he] had to use his inhaler after the exam and had some *obvious limitations*." (Doc. 9 at 11). Stacy Davis, FNP, did examine Hudson. (Tr. at 614). However, the "obvious limitations" she wrote in her report were regarding his need for "adequate seated rest periods" during an eight-hour workday and that he may suffer from shortness of breath during "strenuous movement." *Id.* This evidence shows substantial evidence that the ALJ properly considered all of Hudson's subjective and objective medical evidence.

Based on the objective medical records and Hudson's own testimony regarding his shortness of breath, there is substantial evidence to affirm the ALJ's finding that Hudson's COPD did not diminish his capacity to work beyond performing a limited light range of work.

Because the ALJ found that Hudson's statements regarding his neck pain, numbness and tingling, and COPD were not consistent with the objective medical evidence, there was substantial evidence to support the ALJ's finding that Hudson is not disabled and that he can perform work-related activities within the range of light work with the noted limitations.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED.**

**DONE** and **ORDERED** this November 5, 2024.

 

_____

**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE